**THRIFTY–PAYLESS INC.,
a California corporation,
Plaintiff—Appellee,**

v.

**ENNEN FOOD STORES INC, a Washington corporation; Brown & Cole Stores LLC, a Washington limited liability company, Defendants—Appellants,**

and

**Ennen Brothers Partnership,
Defendant.**

No. 03–35425.

D.C. No. CV–02–00617–RSL.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 8, 2004.*

Decided Nov. 3, 2004.

Delbert D. Miller, Heidi S. Batemen, Miller Bateman LLP, Seattle, WA, for Plaintiff–Appellee.

Philip J. Buri, Brett & Daugert, PLLC., Bellingham, WA, Floyd L. Newland, James L. Austin, Walter E. Barton, Karr Tuttle Campbell, Seattle, WA, for Defendants–Appellants.

Before D.W. NELSON, THOMAS, Circuit Judges, and EZRA, District Judge.**

MEMORANDUM***

Movants–Appellants Ennen Food Stores, Inc., ("EFS"), a Washington corporation, and Brown & Cole Stores, LLC,

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

** The Honorable David Alan Ezra, Chief United States District Judge for the District of Hawaii, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

("Brown & Cole"), a Washington limited liability corporation, appeal from the District Court's Order Granting Appellee Thrifty Payless, Inc.'s ("Thrifty") Motion for Summary Judgment, Denying Brown & Cole's Motion for Summary Judgment, and Granting a permanent injunction in favor of Thrifty.

The parties to the appeal lease properties in the Lynden Towne Plaza Shopping Center ("Shopping Center") in Lynden, Whatcom County, Washington. The parties' dispute involves various leases and covenants regarding the use of premises presently occupied by the two principal tenants, Brown & Cole, who operates the supermarket, and Thrifty, who operates the pharmacy. The specific leases at issue include a lease entered into between the original owner of the shopping center and Associated Grocer's Inc. ("the AG lease"), and a sublease signed contemporaneously between Associated Grocer's Inc. ("AG"), and its initial subleasee, EFS ("the Sublease"). Brown & Cole currently operate the supermarket under the sublease.

The instant dispute arose when Brown & Cole underwent reconstruction of its supermarket to include an in-store pharmacy. Thrifty maintains that an in-store pharmacy would violate the various leases and covenants binding the parties, and consequently, sought a preliminary injunction in district court. The district court ultimately issued a permanent injunction prohibiting Brown & Cole from operating a pharmacy on the supermarket premises.

## DISCUSSION

a. *Express or Implied Restrictive Covenant*

■ Appellants Brown & Cole and EFS (collectively "Appellants") maintain that

Thrifty is ultimately arguing that the lease at issue contains an implied restrictive covenant. Appellants state that pursuant to Washington law, Thrifty cannot establish an implied covenant. Thrifty maintains that the restriction contained in the leases expressly provides that Brown & Cole can only use the premises to operate a supermarket.

Section 3.08 of the AG Lease states that "[n]othing in this Lease shall constitute an express or implied covenant by Tenant to operate a supermarket or other business on the Leased Premises." ER 144. However, in Section 6.01 of the AG Lease, it states that "[u]ntil the fifth (5th) anniversary of the Lease Commencement Date, Tenant shall use the Leased Premises for grocery supermarket, retail food and non-food store purposes...." ER 148.[1] The court finds that the lease is ambiguous because in one section, the AG lease appears to prohibit any type of restrictive covenant on the property, but in a later section, explicitly provides for such a restriction. Accordingly, the court will look to the sublease, which was signed contemporaneously with the AG lease, and to extrinsic evidence, to resolve the ambiguity in the lease. *See Public Utility Dist. No. 1 of Lewis County v. Washington Public Power Supply System*, 104 Wash.2d 353, 373, 705 P.2d 1195 (1985) (holding that if a court reads each provision of a contract in pari materia with the whole contract and in light of all the circumstances surrounding it, and the language remains unclear, it may look at extrinsic evidence.)

Unlike the AG lease, the Sublease is entirely devoid of a guarantee that the

---

1. Although the AG lease allowed the Tenant, after the fifth anniversary of the lease commencement date, to request in writing a change in use of the property pursuant to requirements listed in Section 6.02 of the AG Lease, appellants never provided a written request to include a pharmacy.

premises would be unencumbered by a restrictive covenant. Instead, the Sublease expressly limits the subtenant's use of the property to that of a supermarket. First, the Sublease describes the premises subleased as "those certain retail supermarket premises situated in the Lynden Towne Plaza Shopping Center." ER 196. It also states in Section 8 that the "Subtenant shall use the sublease premises *only* for the purposes of conducting a retail food and non-food grocery supermarket business...." ER 201 (emphasis added). The sublease further states that the subtenant "shall conduct no other business on the subleased premises." ER 201–202. Accordingly, the Sublease, drafted simultaneously with the AG lease, clearly shows an express restrictive covenant in the use of the subleased premises.

Relevant extrinsic evidence of the parties' intent also clearly establishes that the AG lease contains an express restrictive covenant. The CC & Rs drafted for the property suggest that the parties intended to restrict the use of the leased premises to a supermarket. Throughout the CC & Rs, the language contemplates the operation of a supermarket in the leased premises, and prohibits restaurants, taverns, bars, and gyms, amongst other businesses, from operating in the shopping mall. By executing a detailed list of establishments that would be restricted from the Lynden Towne Shopping Center so long as the leased premises were operated as a supermarket, it was clear that the parties intended that the subleased premises would in fact be a supermarket.

Finally, ambiguities in the contract are interpreted against the drafter. *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir.1995). To the extent that the above discussion does not resolve the ambiguity in the contract, the AG lease must be construed against AG and its sub-

sequent sublessee. Accordingly, the court finds that the AG lease and Sublease contained an express restrictive covenant limiting the use of the leased premises to a supermarket

b. *Can Appellants Operate A Pharmacy Given the Express Restrictive Covenant?*

■ As quoted above, both the AG lease and the sublease contain provisions limiting the supermarket to selling items customarily sold in supermarkets, or incidental to a grocery supermarket business. Appellants argue that pharmaceutical products are customarily sold in supermarkets such that they should be permitted to sell such products even pursuant to the restrictive covenant in the lease. Specifically, they maintain that they are not limited to selling items customarily sold in supermarkets in 1991 when the Sublease was signed, but rather are only restricted to selling items customarily found in supermarkets today. Regardless, Appellants state that even around the time the leases were signed, the Food Marketing Institute produced study in 1992 indicated that among new, larger grocery stores, more than half contained pharmacies.

Appellants' argument is unpersuasive. First, as stated above, the court looks to the parties' intent at the time of contracting. *Taylor–Edwards Warehouse*, 715 F.2d at 1334. When the parties signed the contract, they intended to limit the subtenant to selling only those items customarily found in supermarkets at that time. The fact that a study conducted a year after the parties signed the lease indicated that new, larger supermarkets contained pharmacies simply does not establish what was customarily sold in all supermarkets. Moreover, the court does not equate a customary practice with the practices of half of new supermarkets.

c. *Thrifty has standing to bring suit*

▪ Finally, Brown & Cole argue that Thrifty lacks standing to enforce provisions of the AG lease and Sublease because Thrifty was not a party to those contracts. The court disagrees. As was stated by the district court, the provisions in the AG lease and Sublease prohibiting the operation of a pharmacy were created for the benefit of the future pharmacy tenant, and therefore Thrifty has standing to enforce provisions in both leases.

Given the above stated facts, it is clear to the court that the district court did not abuse its discretion in entering a permanent injunction barring the inclusion of a pharmacy in Appellant Brown & Cole's supermarket, and in granting Thrifty's Motion for Summary Judgment and denying Brown & Cole's Motion for Summary Judgment.

**AFFIRMED.**